# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2026

Lyle W. Cayce
Clerk

No. 25-20058

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DEREK DEWAYNE SMITH,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-50-1

Before JONES and ENGELHARDT, *Circuit Judges*, and SUMMERHAYS, *District Judge*[*].

PER CURIAM:[**]

Almost one year after Derek Smith was released on supervision, the Probation Office sought a revocation of his supervised release, alleging five violations of supervised release conditions. Relying in part on Smith's "pending new law violations," the district court varied upward from the

---

[*] United States District Judge for the Western District of Louisiana, sitting by designation.

[**] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-20058

guidelines and sentenced Smith to the statutory maximum term of imprisonment. On appeal, Smith argues that his revocation sentence is substantively unreasonable because the district court erroneously relied on a "bare" arrest record. Because the district court's consideration of Smith's "pending new law violations" was not a dominant factor in the court's decision, we affirm Smith's sentence.

## I.

In February 2020, Smith was charged in a superseding indictment with various offenses, including the possession of stolen mail in violation of 18 U.S.C. § 1708. He pled guilty to the possession of stolen mail charge and the district court sentenced him to forty-two months' imprisonment and three years of supervised release.

One week before Smith's supervised release term was set to begin, the Probation Office asked the district court to modify Smith's supervised release conditions because he did not have a viable reentry release plan. Smith was required to provide a valid address while on supervised release and was also required by state law to register as a sex offender.[1] Despite these requirements, Smith refused to cooperate with probation officers to secure viable housing after release, twice becoming "extremely argumentative and combative" during meetings addressing concerns about his release plan. The probation officer explained that Smith was one of their "higher risk" supervised persons because of his "violent criminal history, lack of employment, substance abuse and negative social networks."

In response to the Probation Office's request, the court conducted a hearing on August 9, 2022, to consider modifying Smith's supervised release

---

[1] In 2009, Smith was convicted of two counts of indecency with a child.

conditions. The court warned Smith twice that he could face up to two years in prison if he violated his supervised release conditions. The court also expressed concerns about Smith's "uncooperative" behavior toward probation officers, as well as his "long criminal history," including his prior conviction for indecency with a child. After Smith assured the court that he agreed to comply with the probation officer's proposed modifications, the court warned him that "there's no more fooling around . . . . None whatsoever." The court modified Smith's supervised release conditions to require that he (1) participate in a community treatment center or halfway house for up to six months, (2) "be diligent and aggressive in his quest to secure a personal residence," (3) participate in sex offender treatment, and (4) submit to periodic polygraph testing. Smith's supervised release term began on August 12, 2022.

On March 2, 2023, the Probation Office informed the court that Smith had violated his supervised release conditions by possessing and using a controlled substance. The probation officer asked the court to defer adverse action, so that Smith could participate in substance abuse treatment. The court agreed, and the supervised release term continued.

On August 8, 2023, the Probation Office filed a petition seeking revocation of Smith's term of supervised release. The petition alleged five violations of the supervised release conditions: (1) the above-mentioned illegal possession and use of a controlled substance; (2) failure to participate in a drug and alcohol treatment program; (3) failure to participate as directed in a sex offender treatment program; (4) failure to submit monthly reports to the probation officer as directed; and (5) failure to report to the Probation Office as directed. The district court issued an arrest warrant for Smith on August 8, 2023, but he was not arrested until October 31, 2024. After Smith was arrested in the Western District of Texas, he was transferred to the Southern District of Texas for further proceedings.

No. 25-20058

The district court conducted a revocation hearing on February 13, 2025, and Smith admitted to all five violations alleged in the petition. The Probation Office identified a sentencing guidelines range of five to eleven months' imprisonment.[2] Defense counsel requested a sentence "at the low end of the guideline range," and explained that "Mr. Smith knows that this Court is not pleased with the fact that he absconded from supervision." The court then interjected, "For a year and a half." Defense counsel further informed the court that Smith "was the victim of a violent sexual assault," and the court noted, "He's got a history of sex offenses, too, I believe." Defense counsel then held the following exchange with the court:

> DEFENSE COUNSEL: I will note that although he did abscond from supervision, he did not pick up any new charges.
>
> COURT: Well, I think he's got some pending now in a different county.
>
> DEFENSE COUNSEL: I believe that there were cases that were pending at the time of his original sentencing before this Court; however, it is my understanding that those cases have all been wrapped into one case. I am not aware—my client's understanding is that they were dismissed. I am not personally aware of any cases that are still pending, but I also did not check as of this morning what may still be lingering.
>
> MR. SMITH: That's correct. There shouldn't be any cases.
>
> DEFENSE COUNSEL: Again, my client is adamant there are no other cases that he is aware of. Are there?
>
> PROBATION OFFICER: Yes.

---

[2] All violations listed in the petition to revoke supervised release were Grade C violations. *See* U.S. SENT'G GUIDELINES MANUAL §7B1.1(a)(3). Smith had a criminal history category of III.

4

No. 25-20058

> DEFENSE COUNSEL: I stand corrected. It sounds as if probation does have new cases. I have not been provided with any notice of them at this time.

Defense counsel then argued in support of her request that federal supervision be terminated, noting continued state supervision and Smith's lack of medication at his detention facility. Smith then made a statement to the court, apologizing for "taking off and absconding on this," and saying he "was broken at the time" although "[i]t's no excuse[.]"

The government recommended a sentence "at the highest end of the guidelines," arguing that Smith "didn't make a year on supervised release" and that he "was a fugitive for quite some time." The prosecutor explained:

> He was arrested in Williamson County, Texas, pursuant to the Court's warrant and at that time was charged with evading arrest and failure to identify himself. So he does have two pending charges in Williamson County that are a result from his arrest on this warrant. So for those reasons I'd ask for a high end sentence, Your Honor.

The court then asked, "what's the high end" and the government responded that it was eleven months.

The record indicates that defense counsel reviewed supporting documentation for the new pending charges and asked the court for "a moment to show my client the information I got from the probation office." This supporting documentation was not entered into the record. After a brief pause in proceedings, defense counsel informed the court that Smith "was under the impression that [the pending new charges for evading arrest and failing to identify] had been dismissed, but it does appear that there is a court date on March 25th." Defense counsel also noted that, according to the documentation, "this occurred, it looks like October 24th." Defense counsel then re-urged her prior arguments, emphasizing that Smith had been in continuous

No. 25-20058

custody since October of 2024 and had used that time to contemplate his behavior and "the direction of where he wants his life to go."

At the conclusion of the hearing, the district court revoked Smith's supervised release and imposed an upward variance sentence of twenty-four months in prison—the statutory maximum. The court stated that "an upward variance is appropriate" based on Smith having "absconded for one and one half years; and also based upon the history and characteristics of the defendant—he failed a drug test and pending new law violations—I've reviewed 18 United States Code Section 3553(a), the revocation worksheets and the Chapter 7 policy statements." The court ordered the sentence to be consecutive to any other pending charges and did not impose an additional term of supervised release.

After the district court made its determination, defense counsel stated that Smith was "frustrated" because "[f]rom his perspective he believes that the state case was dismissed." She asked, "If I get information that suggests that perhaps the state case is dismissed, contrary to the information before the Court, would the Court be willing to entertain a written—." The court interjected, "You can file a request for a rehearing."

Smith timely filed a notice of appeal on February 21, 2025.[3] He appeals only his revocation sentence, arguing that it is substantively unreasonable because the district court improperly relied on a bare arrest record in deciding to impose the upward variance.

II.

_____

[3] *See* FED. R. APP. P. 4(b)(1)(A)(i), (b)(2).

No. 25-20058

We review a properly preserved challenge to a revocation sentence under a "plainly unreasonable" standard.[4] If there is no procedural error, we consider "the substantive reasonableness of the sentence under an abuse of discretion standard, examining the totality of the circumstances."[5] Even if we determine that the sentence is substantively unreasonable, we will only vacate the sentence if the error is "obvious under existing law," so that the sentence is "not just unreasonable but is *plainly* unreasonable."[6]

However, if the error was not preserved, we review the challenge for plain error.[7] Here, defense counsel did not object to the district court's reliance on an improper sentencing consideration, so we review Smith's challenge for plain error.[8] To demonstrate plain error, a defendant must prove that (1) the district court erred, (2) the error is plain, (3) the error affects his substantial rights, and (4) failure to correct the error would affect the fairness, integrity, or public reputation of the judicial proceedings.[9]

III.

_____

[4] 18 U.S.C. § 3742; *United States v. Fuentes*, 906 F.3d 322, 325 (5th Cir. 2018).

[5] *Fuentes*, 906 F.3d at 325 (internal quotation marks and citation omitted).

[6] *United States v. Foley*, 946 F.3d 681, 685 (5th Cir. 2020) (emphasis in original) (internal quotation marks and citation omitted); *see also United States v. Sanchez*, 900 F.3d 678, 682 & n.1 (5th Cir. 2018) ("Law from the 'obviousness' prong of Rule 52(b)'s plain error test informs this . . . inquiry, notwithstanding that the error was in fact preserved." (internal citation omitted)); *United States v. Rivera*, 784 F.3d 1012, 1017 (5th Cir. 2015) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) ("For legal error to be 'plain,' it must be 'clear or obvious', rather than subject to reasonable dispute.").

[7] *Foley*, 946 F.3d at 685.

[8] *United States v. Campos*, 922 F.3d 686, 688 (5th Cir. 2019).

[9] *Id.*; *see also Rivera*, 784 F.3d at 1016-19 (although the district court plainly erred by making the seriousness of murder and the need for just punishment dominant factors in Rivera's revocation sentence, the judgment was affirmed because the third and fourth prongs of plain-error review were not satisfied).

A district court may revoke a term of supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."[10] Permissible factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to afford adequate deterrence to criminal conduct . . . ."[11] "A sentence imposed on revocation of supervised release punishes a breach of trust for violating the conditions of supervision."[12] A revocation sentence is substantively unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[13]

Even if we determine that the district court gave "significant weight to an irrelevant or improper factor," we will not vacate a revocation sentence unless that "impermissible consideration [was] a dominant factor in the court's . . . sentence."[14]

## A.

A district court may not rely "on a bare allegation of a new law violation" when sentencing a defendant for violating supervised release conditions when the new offense is not supported by evidence at the revocation hearing or does not have other indicia of reliability.[15] "An arrest record is 'bare' when it refers . . . 'to the mere fact of an arrest—i.e.[,] the date, charge,

_____

[10] 18 U.S.C. § 3583(e)(3).

[11] 18 U.S.C. §§ 3553(a)(1), (a)(2)(B).

[12] *United States v. Daughenbaugh*, 793 F. App'x 237, 240 (5th Cir. 2019).

[13] *Foley*, 946 F.3d at 685 (internal quotation marks and citation omitted).

[14] *Id*. (internal quotation marks and citation omitted).

[15] *Id*. at 687.

jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest.'"[16] By contrast, "an arrest record is not bare, and may be relied on, when it is accompanied by a factual recitation of the defendant's conduct that gave rise to a prior unadjudicated arrest and that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability."[17]

In *Foley*, we found that the district court erred by relying on a revocation petition that "contain[ed] only bare allegations" of new law violations, specifically "information about the date, charge, jurisdiction, and disposition of the pending possession and assault charges," and information about the defendant's next court dates.[18] The petition did not "provide any context regarding the underlying facts and circumstances surrounding Foley's arrest or his conduct leading to the arrest" and the parties did not introduce evidence related to those charges during the revocation hearing.[19] Because the petition included only bare allegations that "were not supported by evidence at the revocation hearing" and did not "have other indicia of reliability," we

---

[16] *Id*. at 686 (quoting *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013)).

[17] *Id*. (internal quotation marks and citation omitted); *see also United States v. Oyervides*, No. 21-50844, 2022 WL 780424, at *2 (5th Cir. Mar. 14, 2022) (unpublished) (affirming the district court's reliance on a revocation petition containing a detailed description of the facts underlying the defendant's arrest, including "the victims' detailed recounting of events and the arresting officers' observations of the victims' injuries"); *United States v. Schrock*, No. 24-50050, 2024 WL 4891787, at *1 (5th Cir. Nov. 26, 2024) (unpublished) (rejecting a bare arrest record claim because the revocation petition "included a detailed summary of the facts and circumstances leading to Schrock's arrest").

[18] *Foley*, 946 F.3d at 687.

[19] *Id*.

concluded that the district court erred in considering the alleged new law violations at sentencing.[20]

Here, the district court erred to the extent that it relied on "pending new law violations" when sentencing Smith because there was no evidence in the record of any established, reliable facts leading to the arrest. The petition for revocation did not reference any pending new charges, and while the government explained (at the revocation hearing) that Smith was charged with evading arrest and failing to identify himself when he was arrested, details regarding the arrest were not provided. The only evidence of the new charges was documentation (of the arrest) provided by the probation officer, but it was not introduced into the record. There is no evidence that the documentation contained any details about Smith's underlying conduct and the circumstances surrounding the arrest.[21]

Because giving weight to "bare allegations" of new law violations at sentencing is impermissible under existing law, we now turn to whether this bare arrest record was a dominant factor in the court's revocation sentence such that the district court's error was plain.[22] Under the plain error standard, Smith has not shown that the district court's consideration of his "pending new law violations" was a dominant factor in the revocation sentence.

First, the district court focused on a number of other significant factors supporting an upward variance in the sentence. Notably, the court stated

---

[20] *Id.*

[21] *See Foley*, 946 F.3d at 687 (holding that it is improper to rely on a bare arrest record that reflects little more than "the date, charge, jurisdiction and disposition").

[22] *See Rivera*, 784 F.3d at 1017 (a district court commits a sentencing error "when an impermissible consideration is a dominant factor in the court's revocation sentence, but not when it is merely a secondary concern or an additional justification for the sentence" (internal citation omitted)).

that an upward variance was appropriate because Smith "absconded for one and one half years." A district court may vary upward from the sentencing guidelines due to a defendant's absconding from supervision and failing to abide by the terms of supervision.[23] Smith stated at the start of the hearing that he "knows that this Court is not pleased with the fact that he absconded from supervision." The court then emphasized, "For a year and a half." Based on the record, this factor motivated the district court to depart upward from the guideline range.

The court also based the upward variance on Smith's history and characteristics. Under section 3583(e), the district court could consider Smith's conduct through the lens of "the nature and circumstances of the offense and the history . . . of the defendant," as well as the need "to afford adequate deterrence to criminal conduct."[24] The court had knowledge of Smith's history because the same district judge presided over the modification hearing, in which the court noted the prior sex offense, noted his previous uncooperative behavior toward probation officers, and warned Smith not to commit further violations. The court also specifically mentioned Smith's drug use in explaining the upward variance. Smith's drug violation occurred six months into his supervised release term, and Smith did not fulfill his obligation to go to drug treatment. Based on the record, the court focused on Smith's history both at the revocation hearing and the prior modification hearing, indicating that it was a central consideration for the court.

---

[23] *See United States v. Cano*, 981 F.3d 422, 426 (5th Cir. 2020) (affirming the district court's upward variance based significantly on the defendant's history of absconding); *United States v. Scicutella*, 478 F. App'x 818, 820 (5th Cir. 2012) (affirming the district court's upward variance based on the defendant's conduct in absconding from supervision and failing to abide by the terms of supervision).

[24] 18 U.S.C. §§ 3553(a)(1), (a)(2)(B); *see also* 18 U.S.C. § 3583(e) (directing the district court to consider the factors "in section 3553(a)(1), (a)(2)(B)").

No. 25-20058

Second, Smith has not shown that the district court's reliance on Smith's "pending new law violations" plainly amounted to more than a secondary consideration. Before the court imposed Smith's sentence, the new charges were mentioned twice during the hearing. The court first mentioned the new charges only to correct defense counsel's assertion that Smith "did not pick up any new charges."[25] At this time, the court did not state what the charges were or comment on their substance. The new charges were mentioned for the second time by the government when making its sentencing recommendation. The court also did not comment on the new charges at this time. While the district court did consider the "pending new law violations" when sentencing Smith, this factor did not pervade the hearing such that it was dominant in the court's sentencing determination.

Smith argues that the pending new charges were a dominant factor in sentencing because, in response to defense counsel's question about what she should do in the event the new charges were dismissed, the court told defense counsel that she could file a request for rehearing. However, Smith has not shown that this exchange amounted to more than an instruction as to what defense counsel should do if she thought there was a basis for reducing the sentence. The court did not indicate that a rehearing motion would be successful if the pending charges were dismissed.

Thus, while the district court did impermissibly consider Smith's bare arrest record when sentencing Smith, it was not a dominant factor in the court's decision. Accordingly, Smith has not established that the district court plainly erred.

-----

[25] *See United States v. Zarco-Beiza*, 24 F.4th 477, n.6 (5th Cir. 2022) (noting that because defense counsel first raised the issue of pending charges, "some responsive comment from the court [was] understandable").

No. 25-20058

## B.

Even if the district court plainly erred under the first two prongs of plain-error review, the error did not affect Smith's substantial rights—the third plain-error requirement—because he cannot show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."[26] In fact, at the August 2022 modification hearing, the court expressly warned Smith—twice—that he could face up to two years in prison if he violated his release conditions. After noting concerns about Smith's uncooperative behavior and criminal history, the court warned him that "there's no more fooling around . . . . None whatsoever." When Smith subsequently violated the supervised release conditions, the court emphasized that he had absconded for a year and a half and that his criminal history included a sex offense. Smith cannot show a reasonable probability that, but for the district court's reliance on a bare arrest record, the court would not have imposed the same sentence based on Smith's multiple violations of the supervised release conditions, his absconding for one and a half years, and his criminal history. This is especially true considering that the district court warned Smith multiple times that such conduct could result in the sentence that he ultimately received. Thus, Smith has not shown with reasonable probability that he would have received a lower sentence absent consideration of his bare arrest record.

## C.

Finally, even if the first three prongs of plain-error review were met, we would decline to exercise our discretion to correct the district court's error. "[T]he court of appeals has the *discretion* to remedy the error—

---

[26] *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (internal quotations marks and citation omitted).

discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[27] The fourth prong is not automatic if the other three prongs are met, but rather, is "dependent upon the degree of the error and the particular facts of the case."[28]

Here, Smith's violations of his supervised release conditions demonstrate a disregard for the law and the district court's orders. Smith violated his supervised release conditions within six months of release. When he was granted leniency so that he could participate in substance abuse treatment, he failed to attend and continued to violate his supervised release conditions. He also absconded for one and a half years after an arrest warrant was issued and did not return on his own volition. Because these factors were significant considerations for the district court, and because Smith's sentence does not exceed the statutory maximum, the asserted error does not undermine the "fairness, integrity or public reputation of judicial proceedings."[29]

IV.

Accordingly, we AFFIRM the district court's judgment.

---

[27] *Puckett*, 556 U.S. at 135 (emphasis in original) (internal quotation marks and citation omitted).

[28] *United States v. Mims*, 992 F.3d 406, 410 (5th Cir. 2021) (quoting *United States v. Davis*, 602 F.3d 643, 651 (5th Cir. 2010)).

[29] *See Puckett*, 556 U.S. at 135.